**Byron Keith DUNCAN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 06–01–00180–CR.**

Court of Appeals of Texas, Texarkana.

Submitted May 30, 2002.

Decided Aug. 8, 2002.

---

Bob Wicoff, Houston, for appellant.

Bridget Holloway, Asst. Dist. Atty., William J. Delmore III, Harris County Asst. Dist. Atty., Houston, for appellee.

Before GRANT, ROSS, and CORNELIUS,* JJ.

## OPINION

Opinion by Justice GRANT.

Byron Keith Duncan appeals from the judgment of the district court entered on Duncan's plea of guilty without an agreed recommendation, on a charge of fraudulent use and possession of identifying information, TEX. PEN.CODE ANN. § 32.51 (Vernon

* William J. Cornelius, Chief Justice, Retired, Sitting by Assignment.

Supp.2002). Duncan was sentenced to two years' confinement in a state jail facility to run concurrently with two other cases also on appeal to this court (cause numbers 06–01–00181–CR and 06–01–00182–CR).

On appeal, Duncan contends that his counsel at trial rendered ineffective assistance at the punishment stage of the trial, in two particulars: 1) by failing to object to evidence suggesting Duncan had committed an extraneous offense; and 2) by failing to object to the victims' recommendations of punishment, which were included in the presentence investigation (PSI) report.

### Procedural History

On March 2, 2001, Duncan executed written waivers of his rights, acknowledged the admonishments by the trial court, and entered his plea of guilty to the offense charged in this case.

At the sentencing hearing, the State offered the PSI report into evidence and rested. Duncan testified.

### Ineffective Assistance of Counsel

When confronted with a claim of ineffective assistance of counsel, we are to apply the two-pronged analysis set forth by the United States Supreme Court in *Strickland v. Washington*.[1] Under the first prong of the *Strickland* test, an appellant must show that counsel's performance was deficient. This requires a showing that he or she made errors so serious that counsel was not functioning as the counsel guaranteed to a defendant in a criminal prosecution by the Sixth Amendment to the United States Constitution. In order to be successful in this regard, an appellant must show that counsel's performance fell below an objective standard of

1. 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

reasonableness. Under the second prong, an appellant must show that this deficient performance prejudiced the defense. The appropriate standard for judging "prejudice" requires an appellant to show there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. Both prongs must be proven by a preponderance of the evidence. *Tong v. State,* 25 S.W.3d 707, 712 (Tex.Crim.App.2000), *cert. denied,* 532 U.S. 1053, 121 S.Ct. 2196, 149 L.Ed.2d 1027 (2001); *Blount v. State,* 64 S.W.3d 451, 453–54 (Tex.App.-Texarkana 2001, no pet.). This standard is applied at both the trial and punishment phases. *Hernandez v. State,* 988 S.W.2d 770, 772 (Tex.Crim.App. 1999).

### *Counsel's Failure to Object to Victims' Recommendations of Punishment*

■ Duncan contends his trial counsel was ineffective for failing to properly object to portions of the PSI report offered in evidence containing statements by the victims or persons related to the victims, giving their recommendations regarding whether Duncan should be placed on community supervision.

One of the sections of the PSI report is labeled "VICTIM IMPACT STATE-MENT." Relevant parts of the Victim Impact Statement are as follows:

> **Brenorris McBeth** is the complainant of the stolen check that Mr. Duncan tried to use to purchase tires and wheels at the Discount Tire Store. Mr. McBeth advised this investigator that he saw this person one time. Mr. Duncan tried to sell him the stolen Yamaha motorcycle. Mr. McBeth refused to purchase the motorcycle until Mr. Duncan provided him with a blue title. He reported he

> did not give Mr. Duncan permission to use any of his property. Mr. McBeth also reported the check used was stolen from his vehicle. This complainant reported he was not injured and he did not lose anything of value thanks to the careful service of the clerk and manager at the tire store. *Mr. McBeth originally stated he could care less what happens to the defendant. He then changed his mind and now wishes the Court to know he is opposed to this person being granted probation.*

> **Sandra Cerquera** is the victim of the stolen purse containing all of her identifying information, checkbook, and several credit cards. Some of these items were found in Mr. Duncan's vehicle at the time of arrest. Mrs. Cerquera met Mr. Duncan when she ran and approved credit for the defendant to walk out of the Ex–Imports Motorcycle dealership; . . . . Mr. Duncan was using identifying information for Darris Johnson at the time. Mrs. Cerquera reported to the police that her purse was stolen the same day Mr. Duncan was in her office. Mrs. Cerquera's checkbook and driver's license were missing from the items recovered and have not been returned. Mrs. Cerquera reported to this officer that some of her checks were cashed at Randall's and Kroger's Food Markets. She also reported the defendant went on a clothing shopping spree with her MasterCard. This victim advised she has spent $175.00 out of pocket along with countless hours not working, being on the telephone, and writing to different companies in order to clear up her credit and to keep companies from filing charges against her for purchases she did not make. This has caused her a lot of stress and still wonders what the defendant is going to do with her checkbook and Driver's License. *Mrs. Cerquera believes this defendant will continue*

*to commit fraud if given probation. She does not feel comfortable for Mr. Duncan to be granted probation.* This victim reported she remembers the defendant very well and stated that defendant seemed to be a convincingly smart and intelligent young man whom [sic] seems to be wasting his life.

. . . .

**Kim Huynh** is the salesperson that sold Mr. Duncan a men's bracelet and women's earrings for a total of $2466.26. Mr. Duncan walked into Zales Jewelry store and obtained credit to buy the items under the name of Darris Johnson. The men's bracelet recovered from Mr. Duncan's vehicle was in a Zales box. Ms. Huynh request [sic] the Court allow a representative of her company to inspect the recovered men's bracelet in the Zales box to see if this is the item taken from Zales. The jewelry is listed as located at the HPD property room under case # 136342100H. *Ms. Huynh wants the Court to know that she does not feel comfortable with the defendant being granted probation.*

. . . .

**Darris Johnson** is the victim whose name was used to obtain credit at several places including the Ex–Imports Motorcycle Dealership. Mr. Johnson is a student at College Station. He reported he has been too stressed out over what Mr. Duncan did to him. Mr. Johnson reported his studies have suffered and his grades have dropped due to the pressure of having to clear his name by taking time from school to deal with creditors looking to get paid for Mr. Duncan's fraud. Mr. Johnson reported he has spent about $75.00 in Notary fees along with time needed and is still spending time to rectify the situation. *Mr. Johnson wants the Court to know he is severely opposed to Mr. Duncan receiving probation.*

(Emphasis added.)

TEX.CODE CRIM. PROC. ANN. art. 42.03, § 1(b) (Vernon Supp.2002)[2] permits a victim, close relative of a deceased victim, or guardian of a victim to appear in person and present to the court and to the defendant a statement of the person's views about the offense, the defendant, and the effect of the offense on the victim. The article provides, however, that this statement may not be made until after the assessment of punishment, after the court has determined whether to grant community supervision, after announcement of the terms and conditions of the sentence, and after sentence is pronounced. TEX. CODE CRIM. PROC. ANN. art. 42.03, § 1(b)(1), (2), and (3). Duncan further argues that these specific limitations on victims' statements prevail over the general language of TEX.CODE CRIM. PROC. ANN. art. 42.12, § 9(a) (Vernon Supp.2002), which authorizes the preparation of a PSI report for the trial court "on the circumstances of the offense with which the defendant is charged, the amount of restitution necessary to adequately compensate a victim of the offense, the criminal and social history of the defendant, and *any other information relating to the defendant or the offense requested by the judge.*" (Emphasis added.) Duncan further cites *Sattiewhite v. State*, 786 S.W.2d 271 (Tex.Crim.App.1989). In that appeal, the appellant challenged the ruling of the trial court's refusing to permit a mental health expert to testify as to what punishment, death or mandatory life imprisonment, would be most appropriate for the appellant. The Texas Court of

---

**2.** All references hereafter are to the Texas Code of Criminal Procedure, unless otherwise specified.

Criminal Appeals affirmed the trial court's ruling, holding "[t]he argument that a witness may recommend a particular punishment to the trier of fact has been soundly rejected" concluded that such testimony would escalate into a "battle of the experts." *Id.* at 290. The court in *Sattiewhite* cited *Schulz v. State*, 446 S.W.2d 872 (Tex.Crim.App.1969), which affirmed the trial court's refusal to permit a psychiatrist to give opinion testimony that it would be better for the appellant to be placed on probation than to serve time in prison. The court held that permitting such testimony would invade the province of the jury. *Id.* at 874.

This issue was considered by the Fort Worth Court of Appeals in *Fryer v. State*, 993 S.W.2d 385 (Tex.App.-Fort Worth 1999). The court held that in Article 42.03, the discussion of the "testimony" of a victim does not include the information contained in the PSI report. Further, the Fort Worth court cited Article 42.12, § 9(a), which contains broad language permitting the PSI report to contain "any other information relating to the defendant or the offense." *Fryer*, 993 S.W.2d at 388.

At the time of Duncan' briefing, the Texas Court of Criminal Appeals had granted petition for discretionary review in *Fryer*. The court has now ruled on the petition, affirming the decision of the Fort Worth court. *Fryer v. State*, 68 S.W.3d 628 (Tex.Crim.App.2002). The Texas Court of Criminal Appeals's opinion in *Fryer* mentions the above-noted broad language of Article 42.12, § 9(a) with reference to information contained in the PSI report. *Id.* at 630–31. It distinguishes *Sattiewhite* as being limited to expert testimony regarding punishment and further holds that the case was limited to testimony and the information contained in the PSI report regarding the victim's recommendation on whether to grant community

supervision did not constitute testimony. *Id.* at 631–32.

As the Texas Court of Criminal Appeals in *Fryer* has ruled that a PSI report may properly contain the victim's recommendation as to whether to grant community supervision, we follow the court's determination. This issue is overruled.

### *Failure of Counsel to Object to Errors Referenced in Duncan's Involvement in a· "Pyramid Scheme"*

Duncan also contends trial counsel was ineffective at the punishment stage because he failed to properly object to the "prosecutor's unfair manipulation of the Appellant's testimony [that] implied an extraneous offense that had not been shown beyond a reasonable doubt to have been committed by the Appellant." He argues that the prosecutor's questions attempted to show he was involved in some kind of illegal pyramid scheme and, because this offense was not shown beyond a reasonable doubt, it could not therefore be considered by the trial court at the punishment stage. Duncan argues the trial court must have considered this because he was assessed the maximum punishment of two years' confinement in a state jail facility.

At the punishment stage, Duncan testified on direct examination he worked for Prepaid Legal Services. On cross-examination, the first question the prosecutor asked him concerned the nature of Prepaid Legal Services. Duncan answered it was "like a triangular type thing," and the prosecutor continued as follows:

Q. Like a pyramid scheme?

A. Correct. It's—like they sell like legal insurance for like lawyers or something like that.

Q. Okay. What do you mean? You sell something?

A.  Well, I—if I was to go out into the community and speak to someone about prepaid legal services, I would tell them about the company and I would bring them into a meeting. All our meetings are held on Tuesdays. And I would bring them into the meeting and—

Q.  Is this what you do, or you would do?

A.  That's what I do.

Q.  Okay. What do you sell them? Tell the Judge what you are selling these people.

A.  Selling them—it's insurance to have like a legal shield type insurance. If they were to get into any trouble and they don't have a lawyer—

THE COURT: Did you sell yourself any?

THE DEFENDANT: No, sir. No, sir, I didn't receive any.

Q.  [by the prosecutor] And why is that?

A.  Because of—the simple fact that it was something that I could just do—it was flexible and it would bring in an income.

Q.  What's a pyramid scheme?

A.  Well, I don't really—I don't know if it's called a pyramid scheme or if it's called a pyramid.

A pyramid scheme sounds to me is something that's getting over on someone. And that's not what the company does.

The prosecutor continued, several pages later:

Q.  All right. Thank you. Prepaid Legal Services, you're telling us it's a pyramid scheme. Is it a legal pyramid scheme?

A.  Ma'am.

Q.  What are you actually selling?

A.  It's legal insurance.

Q.  Who are the lawyers?

A.  They have their own group of lawyers.

. . . .

Q.  So, when you're talking about a pyramid scheme, doesn't that mean that the people who are in it at the beginning make a whole lot of money and the people at the end don't make any money, . . . ?

A.  No, that's not correct.

Q.  Well, that's what this is—how is this one different?

A.  Because when the people come in they have the opportunity to join into the Prepaid Legal Services. They don't just have to buy or—to have themselves a lawyer; they can also join into where they're selling insurance also and make the same amount of money that everyone else is making.

The prosecutor continued in her summation:

And this is a fraud case, and which he's admitted to being a member of a pyramid scheme.

. . . .

And the fact that he's working and continues to work at a place that he himself describes as some type of pyramid setup, where people who get in at the beginning get paid a lot and if you don't get in until the end you don't get paid as much.

Besides mischaracterizing Duncan's testimony, it is clear the prosecutor made no serious attempt to get at the true nature of the operation by which Duncan was employed, Prepaid Legal Services, to attempt to show, by facts and not "sound bites," that it was an illegal operation. *See* TEX. BUS. & COM.CODE ANN. § 17.461 (Vernon 2002). Her obvious purpose was to attach the label "pyramid scheme" to Duncan.

■ The prosecutor has demonstrated through her questioning neither that the Prepaid Legal Services[3] program was an illegal pyramid scheme nor that Duncan admitted being a member of an illegal pyramid scheme. In fact, he specifically disputed the prosecutor's characterization of his employer as an illegal operation. Duncan's counsel did make some attempt to point out that the prosecutor had mischaracterized Duncan's testimony, but counsel did not object to the prosecutor's manipulation of testimony until the testimony was repeated several times. However, no explanation of trial counsel's reasoning or possible strategy appears in the record of this case. Any claim of ineffective assistance is required to be "firmly founded" in the record. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex.Crim.App. 1999).

■ As far as strategic or tactical reasons for counsel's action or inaction, in the absence of direct evidence of counsel's reasons for the challenged conduct, an appellate court will assume a strategic motivation, if any can be imagined. *Garcia v. State*, 57 S.W.3d 436, 440 (Tex.Crim.App. 2001). We will not conclude that the challenged conduct constitutes deficient performance unless the conduct was so outrageous that no competent attorney would have engaged in it. *Id.; see Thompson*, 9 S.W.3d at 814. In *Osorio v. State*, 994 S.W.2d 249 (Tex.App.-Houston [14th Dist.] 1999, pet. ref'd), the Fourteenth Court of Appeals held that, notwithstanding the prosecutor's blatant injection of erroneous and derogatory remarks about "Columbian cocaine" into the proceedings, called by the concurring opinion "needless prosecutorial misconduct," *Id.* at 253–54, the appellant's claim that his counsel was ineffective for failure to object could not be sustained

because there was no evidence in the record as to trial counsel's reasoning for failure to object. The court held that with nothing in the record, the appellant had failed to overcome the recognized presumption that counsel's actions (or, in this case, inactions) were based on sound trial strategy. *Id.* at 253.

Direct appeals often present a limited record for review of the typical issues raised in an ineffective assistance point. *Thompson*, 9 S.W.3d at 812. One way to present evidence of counsel's trial strategy or other matters in the direct appeal record is through a motion for new trial. *See Motley v. State*, 773 S.W.2d 283, 290 (Tex. Crim.App.1989) (evidence relating to counsel's trial strategy appeared in the record because a motion for new trial was held on the issue of counsel's ineffective assistance). Another way to develop a proper record is through a hearing in a habeas corpus collateral attack. *See generally* Tex.Code Crim. Proc. Ann. art. 11.01, et seq. (Vernon 1977 & Supp.2002).

The Texas Court of Criminal Appeals has recognized that a reviewing court will only rarely be provided with a record capable of providing a fair evaluation of the merits of a claim of ineffective assistance. *Thompson*, 9 S.W.3d at 813; *Jackson v. State*, 973 S.W.2d 954, 957 (Tex.Crim.App. 1998). To defeat the presumption of reasonable professional assistance, "[a]ny allegation of ineffectiveness must be firmly founded in the record and the record must affirmatively demonstrate the alleged ineffectiveness." *McFarland v. State*, 928 S.W.2d 482, 500 (Tex.Crim.App.1996).

■ When direct appeal does not provide an adequate record to evaluate a claim which might be substantiated through additional evidence gathered in a

---

**3.** Prepaid Legal Services contracts were authorized by Article 5.13–1 of the Texas Insurance Code, which was initially passed in 1975.

habeas corpus proceeding, a claim of ineffective assistance of counsel will properly be raised through habeas corpus, even if it had been previously rejected on direct appeal. *Ex parte Duffy,* 607 S.W.2d 507, 513 (Tex.Crim.App.1980), *quoted by Oldham v. State,* 977 S.W.2d 354, 363 (Tex.Crim.App. 1998); *see also Jackson,* 973 S.W.2d at 957; *Ex parte Torres,* 943 S.W.2d 469, 475 (Tex.Crim.App.1997).

The record in the present case is silent as to trial counsel's strategy. The State contends there is a conceivable trial strategy, i.e., counsel intended to allow Duncan to explain his answers regarding the "pyramid scheme." We also observe that because the matter was tried to the court and not a jury, counsel may have assumed the trial court was aware of the statute authorizing prepaid legal services (Article 5.13–1 of the Texas Insurance Code) and recognized that the elements of the "pyramid scheme," contained in Section 17.461 of the Texas Business and Commerce Code is defined as having certain prerequisites that were not shown in evidence to exist in the program in which Duncan had participated. We are required, therefore, to hold that Duncan has not met his burden to overcome the presumption of professional assistance and sound trial strategy. This point of error is overruled.

The judgment of the trial court is affirmed.