**UNITED BROTHERHOOD OF CARPENTERS, Appellant**

**v.**

**BIRCHWOOD CONSERVANCY, etc., et al., Appellees.**

**No. 2011–SC–000659–DG.**

Supreme Court of Kentucky.

June 19, 2014.

Rehearing Denied Oct. 23, 2014.

William E. Johnson, Paul Terry Berkowitz, Samuel Ryan Newcomb, Counsel for Appellant.

Thomas Bruce Simpson, Jr., Counsel for Appellee.

Opinion of the Court by Justice SCOTT.

Appellant, United Brotherhood of Carpenters (Union), is an unincorporated association of carpenters. Some of the Union's members volunteered to help build a barn for Birchwood Conservation Center,[1] also an unincorporated association. When the Union's members failed to complete the barn, Birchwood Conservation Center filed suit in Scott Circuit Court for breach of contract against the Union, and later amended its complaint to include one of the Union's members, Ike Harris.

The trial court ultimately dismissed Birchwood's complaint. However, on appeal, the Court of Appeals reversed the trial court and remanded the matter back to Scott Circuit Court for further proceedings. Thereafter, the Union sought discretionary review in this Court, which we granted. The Union now alleges that: (1) the Court of Appeals incorrectly concluded that the Union waived the defense of lack of capacity; (2) the Court of Appeals erred in holding that Ike Harris was a representative of the class of union members; (3) the Court of Appeals failed to address the arguments presented by the parties; and (4) the trial court correctly found that the responses to the amended complaints properly related back to the initial complaint. For the following reasons, we reverse the judgment of the Court of Appeals and reinstate the trial court's dismissal of the case.

## I. BACKGROUND

Birchwood Conservation Center is a non-profit organization whose principal purpose is the care and well-being of endangered animals on a small farm located in Scott County, Kentucky. In 2003, the Public Broadcasting System (PBS) showed interest in filming a documentary on Birchwood's operation and, in particular, the efforts undertaken by a number of volunteers to tear down an existing barn, construct a new one in its place, and construct a second barn on the property using salvaged materials from the old barn. Ike Harris,[2] then a member of the United Brotherhood of Carpenters and Joiners of America, allegedly volunteered to undertake the project with the help of other Union members, in exchange for recognition of the Union in the documentary and additional advertising related to the project.

Harris and other Union volunteers tore down the existing barn, but built neither the new barn in its place nor the barn that was to be built from salvaged materials. In September 2004, Birchwood Conservation Center filed suit against the United Brotherhood of Carpenters[3] in Scott Circuit Court.[4] Birchwood Conservation Center alleged a breach of contract, or, in the alternative, promissory estoppel in its suit. In the Union's reply to the initial com-

---

1. Birchwood Conservation Center is not actually a named Appellee at this point. However, they were the only original plaintiff in the underlying cause of action. This will be discussed in detail below.

2. Harris, allegedly representing the Union as a whole, volunteered his and others' services to complete the project. Harris is no longer a member of the Union.

3. While this is the name used in Birchwood Conservation Center's complaint, the actual name of the Union is the United Brotherhood of Carpenters and Joiners of America.

4. The relevant history of this case will be discussed below.

plaint, it denied the existence of a contract, but asserted no further defenses.

In January 2005, Birchwood Conservation Center filed its first amended complaint, which added Harris as a named co-defendant. Birchwood alleged that Harris agreed on behalf of the Union to demolish and rebuild the barn, and asserted that Harris's conduct, "identifie[d] the services the ... Union contracted to provide." In its answer to the first amended complaint, the Union's only asserted defense was pursuant to CR 12.02(f), which states that "[t]he Complaint as amended fails to state a claim or cause of action against the defendants herein and should therefore be dismissed." At this point, the parties began discovery. Five months later, the Union filed a motion for summary judgment, which, over a year later, the trial court denied. The trial court did, however, dismiss Harris from the action *sua sponte*. The dismissal of Harris was never appealed.

In March 2007, the Union filed a motion to dismiss, or alternatively for judgment on the pleadings or summary judgment. In that motion, and for the first time, the Union asserted that "an unincorporated association such as a labor union, cannot sue or be sued in the name of the association," citing *Clevinger v. Bd. of Educ. of Pike Cnty.*, 789 S.W.2d 5 (Ky.1990), *Diamond Block Coal Co. v. United Mine Workers of Am.*, 188 Ky. 477, 222 S.W. 1079 (1920), and *United Mine Workers of Am. v. Cromer*, 159 Ky. 605, 167 S.W. 891, 892 (1914), for this proposition. In its response, Birchwood asserted that the Union irrevocably waived this defense by failing to assert it in a responsive pleading, as required by CR 12.02.

In April 2007, following the Union's motion, Birchwood Conservation Center filed a motion to substitute Birchwood Conservancy, a California corporation, in the place of Birchwood Conservation Center. Birchwood Conservation Center's motion to substitute did not state that the Center was never incorporated, but, rather, just stated "that its affairs and assets are now managed and operated by the Birchwood Conservancy." Birchwood attached to its motion the Articles of Incorporation for Birchwood Conservancy, dated April 2006—more than eighteen months *after* the beginning of this litigation.

Although Birchwood Conservation Center had asserted in both its original complaint and in its first amended complaint that "Plaintiff, Birchwood Conservation Center, is now, and at all times mentioned was, a non-profit, charitable corporation organized and existing under the laws of the State of Kentucky ...," this was not, in fact, the case. In its response and objection to Birchwood Conservation Center's motion to substitute a party plaintiff, the Union stated:

> The office of the Secretary of State records disclose that not only is Birchwood Conservation Center not listed as a corporation in good standing but there are no records showing it ever to be a corporation in the Commonwealth of Kentucky. The Scott County, Kentucky Clerk's Office likewise has no record of a corporation by the name of Birchwood Conservation Center ever filing articles in that office.

Finally, in May 2007, in its motion for leave to file a second amended complaint, Birchwood Conservation Center admitted that it was never a corporation in the Commonwealth of Kentucky, stating:

> Birchwood Conservancy, a California charitable, nonprofit corporation should be named in the place and stead of the umbrella organization formerly known as Birchwood Conservation Center, which was a charitable project supported by a family trust. Since the

inception of this litigation, the Birchwood Conservation Center has been incorporated into Birchwood Conservancy....

In relevant detail, after this admission, the trial court issued an opinion and order in May 2007 dismissing Birchwood's action as it lacked standing to bring the suit in the first place. Birchwood then moved the trial court to alter, amend, or vacate its opinion and order pursuant to CR 59.05. Birchwood asked the trial court to, instead, allow it to file a second amended complaint which would name plaintiffs who did have standing.

In August 2007, the trial court granted Birchwood's motion to vacate its May 2007 opinion and also granted Birchwood's motion to file a second amended complaint. The trial court also ordered that the parties submit briefs on the court's jurisdiction over the Union. Birchwood then filed its second amended complaint, substituting four new party plaintiffs who did possess standing: 1) Birchwood Conservancy, a California-based corporation with the ability to do business in Kentucky; 2) Lucinda Christian, a principal caretaker of Birchwood's animals; 3) Evan Blakeny, also a principal caretaker; and 4) Robert Christian, the owner of the Scott County farm. The second amended complaint also renamed Ike Harris, individually and as a member of the Union, as a defendant. No new causes of action were asserted in the second amended complaint, although Birchwood did assert several new damage claims.

The Union and Harris then jointly filed a motion to dismiss and an answer to the second amended complaint. The Union again asserted its own lack of capacity to be sued based upon its status as an unincorporated association (although, admittedly, it phrased this assertion as a lack of jurisdiction). Further, the motion argued that Harris should be dismissed from the action, as the trial court had already done so in its February 2007 order, from which no appeal was taken. The motion also argued that the complaint failed to state a claim upon which relief could be granted. Birchwood responded by filing its brief to the trial court, contending that the Union had waited too long to assert such a defense, and had, therefore, waived it.

After waiting more than eighteen months after filing its brief with no response from the trial court, Birchwood moved for a status conference. Shortly thereafter, the trial court dismissed the new plaintiffs' claims on the basis that the Union could not be sued due to its status as a voluntary association, and that Harris had already been removed from the suit. The new plaintiffs then filed a timely notice of appeal, and the Court of Appeals ultimately reversed the trial court. It is from that reversal that the Union sought the discretionary review of this Court, which we granted. We now reverse.

## II. ANALYSIS

The Union first argues that the trial court properly dismissed the new plaintiffs' complaint based upon its finding that the Union had not waived, and, thus, could assert a defense based upon its lack of capacity to be sued. Therefore, the Union argues that the Court of Appeals incorrectly held that the Union waived the defense of lack of capacity to be sued. Because the trial court's dismissal (and the Court of Appeals' reversal of that dismissal) was based upon a matter of law, we review the decision *de novo*. *Revenue Cabinet v. Hubbard*, 37 S.W.3d 717, 719 (Ky.2000).

As laid out above, first in its motion to dismiss from March 2007 and then again in its answer to the new plaintiffs' second amended complaint in August 2007, the

Union raised the argument that this action could not proceed because an unincorporated association cannot be sued in the state of Kentucky. *Cromer,* 167 S.W. at 892. While it is correct that an unincorporated association cannot typically be sued in its own name, the issue arises as to whether this argument was raised in a timely manner.

There is no dispute that the Union failed to assert that it lacked the capacity to be sued until some two and a half years after the initial complaint was filed. The question before this Court, however, is whether the failure to assert that defense in the initial response constituted a waiver of that defense, and, if so, was the defense revived when it was discovered the original plaintiff had no standing to bring the case, new parties were then substituted, and filed a new amended complaint raising new claims of damages.[5]

We first point out that there are unusual circumstances presented in this case. Even though there was some confusion in the lower courts (and in the language used in the Union's motions below), the issue presented to this Court is whether the Union waived the defense of lack of capacity to be sued. Although the Union did not use the words "lack of capacity" in its motion and amended answer below, it is clear this was the defense it asserted once the new plaintiffs entered the case and filed the new complaint. In fact, the Union stated in its motions to the trial court that "an unincorporated association cannot be sued nor bring suit" and "[t]he Union continues to take the position that as an unincorporated association the Court lacks jurisdiction over it in this case." This was clearly an argument couched in terms of a lack of capacity to be sued, even though this exact phrase was omitted from the discussion.

Furthermore, in this case, both the Union and Birchwood Conservation Center were unincorporated associations at the time the initial complaint was filed (and, indeed, the corporation Birchwood Conservancy, which is now a party, did not even exist at this litigation's inception). Therefore, the Union had the lack of capacity defense available to it when it filed its answer to the initial complaint, and under normal circumstances, as will be discussed further below, if the Union wanted to assert that defense, it should have done so in its initial answer to Birchwood's initial complaint. CR 12.02.

Still, these are not normal circumstances. Not only was the Union an unincorporated association, so was the only named plaintiff in the original suit, Birchwood Conservation Center. Therefore, Birchwood Conservation Center lacked standing to file suit in the state of Kentucky. *Diamond Block Coal,* 222 S.W. at 1085 ("It is a general rule that voluntary associations ... have neither power to sue nor to be sued in the association name, except in special cases."). Therefore, when the new plaintiffs (who did possess the authority to file suit) intervened and were allowed to substitute themselves for Birchwood Conservation Center, adding several new damages claims, it was as if *an entirely new complaint* had been filed.

**5.** The new (or substantially altered) claimed damages asserted by the new plaintiffs (including Birchwood Conservancy) are: (1) an increase in the number of animals killed "by predators and violent weather conditions" from five to forty; (2) a new claim for damage and destruction of the materials donated for the building of a new barn; (3) a change from a time delay in the documentary to its cancellation; and (4) a new claim for "[f]uture damages incurred by the Plaintiffs for their foreseeable loss of profit as a result of the deaths and inability to breed the Plaintiffs' animals in order to perpetuate the existence of these breeds of rare and near extinct animals."

Thus, any defenses asserted by the Union in its answer to the new plaintiffs' complaint were timely made, as this was, in effect, the Union's *first* response to the new parties' properly filed complaint with its new or substantially altered claimed damages.

In our consideration of the present case, we note that waiver is an extremely important concept in the interest of judicial economy. It is a waste of judicial—and litigant—resources to allow a party to assert a defense late in the game that could have disposed of the case prior to the employment of valuable resources. Wright and Miller, *Federal Practice and Procedure* § 1295 (3d ed. 2012 Supp). We also note that allowing preservation (but concealment) of a defense of this character could also operate to a plaintiff's prejudice if the defense were allowed to be raised after the statute of limitations for other viable causes of action has run. However, this was not the case here, for we find no indication of intentional concealment; rather, these were two parties who *both* squandered the court's time and resources, in addition to their own.

In this particular instance, the Union put more than two years' worth of resources into defending a law suit that was brought by a party with no legal standing to bring the suit. Thus, it would simply be unfair to allow Birchwood the opportunity to correct its error, without giving the Union an opportunity to correct its error, also.

In so doing, however, we must emphasize that this case is a rare exception to the general rule set out by the Fourth Circuit in *Rowley v. McMillan*, 502 F.2d 1326 (4th Cir.1974), with which we agree.[6] Typically, under *Rowley*, only defenses which were not available in the first answer would be allowed in an answer to an amended complaint. *Id.* Thus, our holding here is confined to the extreme facts we considered.

Accordingly, we reverse the judgment of the Court of Appeals and reinstate the trial court's dismissal of Birchwood's complaint. We need not address the other issues presented in the Union's appeal given that reversal is appropriate on this issue, rendering all other issues moot.

### III.  CONCLUSION

For the aforementioned reasons, we reverse the judgment of the Court of Appeals and reinstate the trial court's dismissal of Birchwood's complaint.

MINTON, C.J., ABRAMSON, CUNNINGHAM, KELLER, and VENTERS, JJ., concur.

NOBLE, J., concurs in result only.

---

**6.** In *Rowley,* the appellant failed to challenge the court's personal jurisdiction over him in response to the original complaint. *Id.* at 1332. Rowley did not contest the fact that he had waived the defense; he simply argued that he had a right to revive the defense given that the plaintiffs had amended their complaint on several occasions. *Id.* Rowley's response to one of those amended complaints included the claim that the action should be dismissed based upon the court's lack of personal jurisdiction. *Id.* The Fourth Circuit held that the defense was foreclosed based upon the principle that an amendment to the pleadings permits the responding pleader to assert only such of those defenses which may be presented in a motion under Rule 12 as were not available at the time of his response to the initial pleading. *Id.* at 1333. This Court is persuaded by *Rowley's* analysis and we would typically apply it as a general rule.