RENDERED:  JANUARY 6, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-1362-MR

EASTERN KENTUCKY                                                    APPELLANT
UNIVERSITY

v.            APPEAL FROM FRANKLIN CIRCUIT COURT
              HONORABLE PHILLIP J. SHEPHERD, JUDGE
              ACTION NO. 21-CI-00621

OHIO VALLEY CONFERENCE                                             APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  ACREE, CETRULO, AND GOODWINE, JUDGES.

CETRULO, JUDGE:  Appellant Eastern Kentucky University ("EKU") appeals

the order of the Franklin Circuit Court denying its motion to dismiss the complaint

of Appellee Ohio Valley Conference ("OVC").

# I.     FACTUAL AND PROCEDURAL HISTORY

EKU was a founding member of OVC, a collegiate athletic conference.  OVC is a nonprofit association made up of member schools located in Kentucky, Illinois, Missouri, and Tennessee; and is governed by a constitution, which the Board of Presidents[1] periodically amends (the "OVC Constitution"). The OVC Constitution identifies members' rights and obligations and requires members to comply with conference rules.  Additionally, the OVC Constitution authorizes OVC to penalize members who violate its rules.

Importantly, the OVC Constitution details the procedure members must follow to resign from conference membership: a resigning member must provide two years' notice of its intent to withdraw and, if it fails to do so, forfeits its right to certain conference fund distributions and must pay a $1 million exit fee. Half of that fee is due upon departure and the other half is due within one year of the initial payment.  EKU was one of the founding members, and its President, sitting on the Board of Presidents, voted to approve those measures.

In January 2021, EKU informed OVC that it was resigning from the conference, effective July 2021 (a year and a half short of the two-year notice

---

[1] The Board of Presidents is made up of Chancellors and Presidents of each of OVC's member schools.

requirement). EKU did not pay the first half of the exit fee – $500,000 – at that time, and it notified OVC that it would not pay any portion of the fee.

OVC then filed a complaint in Franklin Circuit Court alleging that EKU breached its contract (*i.e.*, the OVC Constitution) with OVC. The complaint claimed that EKU's failure to pay the exit fee caused OVC – and its members – damage and it sought a declaratory judgment stating the OVC Constitution was a valid contract that obligated EKU to pay the fee.

EKU moved to dismiss the complaint for failure to state a claim for which relief could be granted. In pertinent part, EKU argued that it was entitled to governmental immunity because it is a state agency. Although EKU recognized that KRS[2] 45A.245 waives governmental immunity for contractual claims, EKU argued that the statutory waiver should not apply because OVC did not have the capacity or standing to sue, and EKU did not agree that the OVC Constitution was a valid contract.

In October 2021, the circuit court heard arguments on the motion to dismiss. The parties presented largely the same arguments as each had briefed, and the circuit court noted that the main questions before it were whether: 1) OVC had the capacity and standing to sue EKU; and, 2) whether the OVC Constitution was a valid contract.

---

[2] Kentucky Revised Statute.

The next month, the circuit court entered its order denying EKU's motion to dismiss ("November 2021 Order"), stating that OVC had associational standing and EKU's argument regarding the validity of the contract "hinges on whether the OVC Constitution is an enforceable contract . . . under KRS 45A.245." It concluded that at that stage in the proceeding – pre-discovery – it was required to "assume the validity of the allegations of the Complaint," which it found had adequately pleaded "the requirements for 'a lawfully authorized written contract' under . . . KRS 45A.245." As such, the circuit court reserved judgment on the issue of EKU's entitlement to governmental immunity pending further factual development. Therefore, the circuit court directed the parties to "proceed with discovery," and explained that "the issues related to the validity of the alleged written contract are subject to further review after discovery[.]"

EKU appealed that denial, and then OVC filed a motion to dismiss the appeal, claiming that it was premature because the circuit court never definitively denied EKU's right to governmental immunity.[3] Therefore, OVC argued there was no basis for this Court to review the interlocutory order. This Court determined, however, that the appeal shall proceed, but "the issues on appeal shall be LIMITED to [EKU's] claim of governmental immunity."

---

[3] While this argument was well received, a motion panel of this Court reserved the right to consider the full appeal before making a determination on the matter. *See Upper Pond Creek Volunteer Fire Dep't, Inc. v. Kinser*, 617 S.W.3d 328, 332 (Ky. 2020).

EKU now argues that the circuit court erred in denying EKU's motion to dismiss because (1) OVC did not have the capacity or standing to sue on a contract theory under KRS 45A.245; and (2) the OVC Constitution was not a valid contract.[4]

## II.     STANDARD OF REVIEW

A circuit court should not grant a motion to dismiss "unless it appears the pleading party would not be entitled to relief under any set of facts which could be proved." *Fox v. Grayson*, 317 S.W.3d 1, 7 (Ky. 2010) (citation omitted). Thus, "the pleadings should be liberally construed in the light most favorable to the plaintiff, all allegations being taken as true." *Id.* (citation omitted). This "eliminates any need by the trial court to make findings of fact; 'rather, the question is purely a matter of law.'" *Id.* (citation omitted). Therefore, this Court

---

[4] EKU also claims that the circuit court erred when it failed to dismiss OVC's non-contractual claims – promissory estoppel, unjust enrichment, and conversion – because they were barred by governmental immunity. However, this Court limited its review to the determination of governmental immunity, not any analysis that should supersede such determination. As such, it is not appropriate for this Court to address the validity of those additional claims at this time. Further, while there may be equitable claims that could be subject to dismissal, the circuit court did not address those in the November 2021 Order. Thus, we are not inclined to review such claims at this juncture. In *Baker v. Fields*, 543 S.W.3d 575, 578 (Ky. 2018), the Kentucky Supreme Court held that a reviewing court can only address the issues presented in the interlocutory appeal itself or parties would bypass the proper appellate process. *See also Commonwealth v. Samaritan All., LLC*, 439 S.W.3d 757, 760 (Ky. App. 2014) ("Although a party can immediately appeal from the denial of a motion to dismiss based upon absolute immunity, most other substantive defenses must wait for adjudication by a final order."). We agree with the circuit court that further discovery is warranted, which permits further briefing and motion practice before that court on those claims.

owes no deference to the circuit court's determination and instead, reviews the issue *de novo*. *Id.* (citation omitted).

### III.   ANALYSIS

EKU argues that the statutory waiver to governmental immunity, under KRS 45A.245, did not apply because (A) OVC did not have the capacity or standing to sue; and (B) the OVC Constitution was not a valid contract.

#### A.    OVC Capacity and Standing to Sue

Although related, capacity to sue and standing to sue are distinct issues. *Winn v. First Bank of Irvington*, 581 S.W.2d 21, 23 (Ky. App. 1978). Capacity to sue speaks to "the right to come into court," and standing to sue speaks to "the right to relief." *Id.* EKU claims that OVC falls short of both analyses and therefore is not entitled to sue under KRS 45A.245. Specifically, EKU claims OVC did not have capacity to sue because it is a nonprofit association, and that OVC did not have standing to sue because it did not meet the requirements for associational standing. We disagree on both issues.

##### 1.    Capacity to sue

First, EKU argues that OVC does not have capacity to sue because it is a nonprofit association and therefore not a "person, firm or corporation" under KRS 45A.245. KRS 45A.245 states, in pertinent part, that "[a]ny person, firm or corporation . . . may bring an action against the Commonwealth on the contract,

including . . . actions [] for breach of contracts[.]" KRS Chapter 45 defines "Person" as "any business, individual, organization, or group of individuals." KRS 45A.030(20). Further, it defines "Business" as "any corporation, partnership, individual, sole proprietorship, joint stock company, joint venture, or any other legal entity through which business is conducted[.]" KRS 45A.030(1).

KRS 273A.010(1) states that "[a]n unincorporated nonprofit association is a *legal entity* distinct from its members and managers." (Emphasis added.) Further, KRS 273A.010(3) provides that "[a]n unincorporated nonprofit association shall have the same powers as an individual to do all things necessary or convenient to carry on its purposes." Taking the allegations in OVC's complaint in a light most favorable to it, we must conclude that OVC is a nonprofit association and therefore a legal entity, which falls within the definition of "person" under KRS 45A.245.

Further, KRS 273A.035(1), enacted in 2015, states that "[a]n unincorporated nonprofit association may sue or be sued in its own name." This makes EKU's reliance on a 2014 case stating that "an unincorporated association cannot typically be sued in its own name," unpersuasive.[5] *See United Bhd. of Carpenters v. Birchwood Conservancy*, 454 S.W.3d 837, 841 (Ky. 2014).

---

[5] Even still, that case focused on the timeliness of the capacity argument. *Birchwood*, 454 S.W.3d at 841. As that is not the issue here, and the legislature enacted statutes clarifying capacity for nonprofit associations, it is difficult to surmise the value of that case in our analysis.

Therefore, we find OVC had the capacity to sue under KRS 45A.245.

**2.      Standing to sue**

To bring suit in Kentucky, a party must also have standing.  Because an association is made up of members, determining standing for such groups requires a specialized analysis: associational standing.  The Kentucky Supreme Court has detailed the associational-standing test – a modified[6] *Hunt*-test[7] – which requires "at least one member of the association . . . individually have standing to sue in his or her own right." *Interactive Gaming Council v. Commonwealth ex rel. Brown*, 425 S.W.3d 107, 113 (Ky. App. 2014) (citation omitted)).  "To have standing to sue, one must have a judicially cognizable interest in the subject matter of the suit." *Bailey v. Preserve Rural Roads of Madison Cnty., Inc., and Curtis Tate*, 394 S.W.3d 350, 355 (Ky. 2011).  Such interest "may not be 'remote and speculative,' but must be a present and substantial interest in the subject matter." *Id.* (citations omitted).

---

[6] In *Interactive Gaming Council v. Commonwealth ex rel. Brown*, 425 S.W.3d 107, 113 (Ky. App. 2014) (citation omitted), this Court acknowledged that "Kentucky has never officially adopted the entire *Hunt* test."

[7] Alternatively, Federal Courts follow the full test outlined in *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 343. 97 S. Ct. 2434, 2441, 53 L. Ed. 2d 383 (1977): "[a]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."

EKU argues that OVC member schools do not meet these standards because they could not demand an exit fee from EKU on their own. However, that is not the relevant question. Here, we must ask whether each member has an interest in the subject matter of the suit – *i.e.*, the exit fee. According to OVC's complaint, they do. OVC explained that if EKU does not pay the fee, OVC member schools will be injured. OVC's complaint outlined its members' interests, as reiterated in its brief: "the clear interest of the OVC's members is in the goods and services that the exit and ticket fees from EKU could enhance, such as OVC athletics competitions, administrative and legal support, seminars and programming, equipment, and – most fundamentally – distributions of funds." Further, the complaint noted that payment of exit fees is "paramount to protecting the interests of athletics conferences, their members, and student-athletes."

In *Bailey*, the Kentucky Supreme Court provided clarification on the amount of "proof" required to meet the standard for associational standing at this stage in the proceeding. *Bailey*, 394 S.W.3d at 357. There, like here, the appellant claimed the appellee did not adequately prove "that any member of the group ha[d] individual standing." *Id.* at 356. The Kentucky Supreme Court emphasized that "[a]t the pleading stage, less specificity is required. At that point, an association may speak generally of the injuries to 'some' of its members, for the 'presumption is that general allegations embrace those specific facts that are necessary to support

the claim.'" *Id.* at 357 (brackets omitted) (quoting *Commonwealth ex rel. Brown v. Interactive Media Entertainment and Gaming Ass'n, Inc.*, 306 S.W.3d 32, 39-40 (Ky. 2010)).

The Kentucky Supreme Court found that the evidence[8] submitted in *Bailey*, although "far from overwhelming," was "sufficient evidence to establish associational standing . . . to shift to appellant the burden of going forward with proof to the contrary." *Id.* *See also Warren Cnty. Citizens for Managed Growth, Inc. v. Bd. of Comm'ns of City of Bowling Green*, 207 S.W.3d 7, 13 (Ky. App. 2006) (finding that "evidence that [members of an association] will be directly affected by [appellee's action]" was sufficient to establish standing for the appellants). There, the Kentucky Supreme Court found the appellant did not present evidence to refute the appellee's evidence of associational standing. *Id.*

Considering these facts in a light most favorable to OVC, as required, it is clear that at least one member of the OVC (likely, all) has an interest in their conference receiving money that will contribute to their programming and distributions. OVC's complaint detailed sufficient evidence to establish associational standing; therefore, the burden shifted to EKU to prove the contrary. Like the appellant in *Bailey*, EKU failed to present evidence that refuted OVC's

---

[8] There, the appellee simply provided evidence proving that one of the members truly was involved in the association, *e.g.*, testimony that he was a member and a list showing his name on the roster. *Id.*

assertion that its members had an interest in EKU paying the exit fee to their conference. Therefore, at this stage, we must conclude that OVC has associational standing.

**B.      Lawfully Authorized Written Contract with EKU**

Next, EKU argues that the OVC Constitution was not a valid contract because it lacked "language demonstrating EKU's intent to be bound or other essential elements of a contract[.]" OVC contends, however, that at this stage in the proceedings, the court must "assume the validity of the allegations of the Complaint." We agree.

KRS 45A.245 requires the parties to have entered "a lawfully authorized written contract[.]" In *University of Louisville v. Rothstein*, 532 S.W.3d 644, 651 (Ky. 2017), the Kentucky Supreme Court emphasized that in enacting KRS 45A.245, "the legislature has waived governmental immunity on *all* claims brought by *all* persons on *all* lawfully authorized written contracts with the Commonwealth." Therefore, as the circuit court stated, EKU's argument for governmental immunity "hinges on whether the OVC Constitution is an enforceable contract with EKU under KRS 45A.245."

OVC's complaint stated explicitly that the OVC Constitution was a "lawfully authorized written contract between [OVC] and [EKU]." However, EKU disputes the existence of a contract and claims that despite those allegations,

-11-

OVC failed to "show that EKU approved the OVC Constitution or agreed to be bound by it."

At this stage in the proceedings, we must take OVC's allegations as true. *Fox*, 317 S.W.3d at 7 (citation omitted). In *Commonwealth v. Samaritan Alliance, LLC*, 439 S.W.3d 757 (Ky. App. 2014), this Court addressed a similar issue in which the plaintiff filed a breach of contract suit against the government and claimed the statutory waiver under 45A.245 applied because their agreement was in writing. Although this Court noted that the writing requirement – like here – was undisputed, the parties disagreed as to whether the agreement was a contract. *Id.* at 762. There, this Court correctly noted that "the pleadings should be construed in the light most favorable to the plaintiff and all allegations taken as true." *Id.* (citations omitted). Further, it concluded that in such situations, "[a]ny factual dispute regarding the existence of a contract is not yet ripe for adjudication." *Id.*

Here, OVC's complaint alleged that the OVC Constitution was a lawfully authorized written contract with an agent of the Commonwealth. Although EKU disagrees with that allegation, under *Samaritan*, that question is not yet ripe for adjudication. Importantly, the circuit court acknowledged that and concluded that further discovery was required. We agree.

Therefore, because the complaint of OVC alleged the OVC Constitution was a lawfully authorized written contract and there remain factual disputes as to the existence of such contract, we find the circuit court properly denied EKU's motion to dismiss.

## IV. CONCLUSION

The complaint of OVC established that it had the capacity and standing to sue EKU under KRS 45A.245 and that the parties had a lawfully authorized written contract.  Therefore, we AFFIRM the November 2021 Order of the Franklin Circuit Court denying the motion to dismiss of EKU and remand to the circuit court for further proceedings.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Jeffrey C. Mando
Covington, Kentucky

BRIEF FOR APPELLEE:

Cory J. Skolnick
Griffin Terry Sumner
Louisville, Kentucky